STATE OF CONNECTICUT *v.* THOMAS E. MARRA, JR.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, JS.

Argued October 19, 1977—decision released March 7, 1978

*Howard T. Owens, Jr.,* for the appellant (defendant).

*D. Michael Hurley,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee (state).

LOISELLE, J. The defendant pleaded guilty to the crime of conspiracy to commit larceny in the first degree in violation of §§ 53a-48 and 53a-122 of the General Statutes and to a second count of larceny in the first degree in violation of § 53a-122 of the

General Statutes. Prior to sentencing, the defendant filed a motion to allow him to withdraw his pleas of guilty to both counts, claiming that they were not entered voluntarily and intelligently. The motion was denied and the court sentenced him on both counts. The sole issue on appeal is whether the court erred in refusing to allow the defendant to withdraw his pleas of guilty.

In order for a plea of guilty to be constitutionally valid, the record must affirmatively disclose that the defendant entered the plea voluntarily and intelligently. *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274; *Blue* v. *Robinson,* 173 Conn. 360, 373, 377 A.2d 1108; *Consiglio* v. *Warden,* 160 Conn. 151, 162, 276 A.2d 773. The plea must be supported by a factual basis. *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100. Such a factual basis is absent when the recited facts reveal less than all the elements of the crime charged. Id., 472. Finally, "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418. Unless the defendant has had real notice of the nature of the charge against him, the plea cannot constitute an intelligent admission. *Henderson* v. *Morgan,* 426 U.S. 637, 645, 96 S. Ct. 2253, 49 L. Ed. 2d 108. "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *State* v. *Battle,* supra, 473.

In the present case, the court questioned the defendant as to the voluntariness of his pleas. To

the court's questions as to whether he was satisfied with the advice and assistance of counsel, and whether he understood that he was giving up certain constitutional rights, including the right to trial, the right to cross-examine and confront his accusers, and the privilege against self-incrimination, the defendant answered in the affirmative. He denied that any threats, force or duress had induced him to enter his pleas, and he expressed understanding that those pleas could be withdrawn only with the court's permission, that the court was not bound by any recommendations made by the state's attorney, and that both offenses to which he pleaded were class B felonies carrying a maximum penalty of twenty years.

The defendant, however, claims that the court erred in denying his motion to withdraw the pleas, urging that the factual basis to which he assented at the time of the pleas was insufficient to render his pleas intelligent and voluntary. The findings reveal that prior to acceptance of the pleas, the assistant state's attorney recited a series of facts underlying the charges. Included in this recitation was the fact that "[t]hrough Blonder and Kernozek [codefendants] it was arranged that Marra would come up (from Bridgeport) and steal Park's car. Marra did come up and steal the car. . . . The vehicle was found in Marra's driveway in Bridgeport." To explain the findings more fully, the evidence printed in the appendix to the state's brief may be examined. *State* v. *Memoli,* 159 Conn. 433, 435, 270 A.2d 543; *Quednau* v. *Langrish,* 144 Conn. 706, 711, 137 A.2d 544; see also Practice Book §§ 628G, 628H. The appendix, including segments of the transcript of the lower court proceedings, reveals that Marra, along with another

codefendant, came for the car. The keys had been left in the car, which was pointed out to them by Parks, the owner. After they took the car, the police were notified that it had been stolen.

General Statutes § 53a-119 defines larceny as occurring "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." The statute clearly requires that the taking be wrongful, accompanied by the requisite felonious intent. Although the present statute has broadened the scope of larceny,[1] the element of intent has been retained from the prior statute[2] and case law. Larceny continues to require "the existence of a felonious intent in the taker to deprive the owner of it permanently." *State* v. *Banet,* 140 Conn. 118, 122, 98 A.2d 530. The facts on record fail to disclose such an intent. Even were the state to prove all such facts, a conviction for larceny could not stand, for, where property is taken with the knowing consent of the owner, larceny has not been committed. *State* v. *Huot,* 170 Conn. 463, 467–68, 365 A.2d 1144; *State* v. *Banet,* supra.

The state argues that since the defendant failed to attack the findings and conclusions of the court which denied his motion to withdraw his pleas, those pleas must stand. That, however, is not the case. In denying the defendant's motion, the court concluded only that the pleas had been voluntarily entered. The court did not conclude that the pleas were intelligently made with a full understanding

---

[1] This statute applies only to those crimes committed on or after October 1, 1971. See General Statutes § 53a-2.

[2] Section 53-63, repealed effective October 1, 1971.

of the nature of the charges and the consequence of the pleas. If the pleas entered were not both voluntary and intelligent, they are invalid as violative of due process. *State* v. *Battle,* supra. Further, even had the court concluded that the pleas were intelligently entered, the conclusion would have to fall as legally and logically inconsistent with the facts found. *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 280, 362 A.2d 1354; *Testone* v. *Allstate Ins. Co.,* 165 Conn. 126, 133, 328 A.2d 686. The facts found by the court essentially reiterate what transpired in court at the time the defendant entered his pleas. The defendant does not dispute those occurrences nor the findings of fact found by the court. The defendant finds issue only in the fact that the court denied his motion to withdraw his pleas and in its determination that the prior proceedings in which the pleas were accepted provided sufficient basis for a valid plea of guilty.

The prior proceedings were inadequate to establish a valid plea. Although the state's attorney, in his recitation of the underlying facts, characterized the defendant's conduct as "stealing the car," that characterization constitutes a legal conclusion rather than an underlying fact. In the present case, the defendant took the car—that is a fact. But this fact alone, particularly in conjunction with the fact that the owner consented to the taking, does not support the legal conclusion that there exists sufficient factual basis for a plea of guilty to the crime of larceny, a crime requiring specific intent permanently to deprive the owner of that which is taken. The facts recited to the court and admitted by the defendant at the time the plea was entered provided an insufficient factual basis to support a plea of guilty to larceny.

The defendant similarly claims that the facts found do not support a plea of guilty to the crime of conspiracy to commit larceny. The facts contained in the record and in both briefs reveal that the conspiracy charge pertained to a conspiracy to defraud the insurance company which insured Park's car. To establish the crime of conspiracy under § 53a-48 of the General Statutes, it must be shown that an agreement was made between two or more persons "to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed." *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091. The existence of a formal agreement need not be established; it is sufficient to show that they are "knowingly engaged in a mutual plan to do a forbidden act." *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153.

The underlying facts found by the court in accepting the plea reveal only the intent of the other defendants knowingly to participate in the alleged conspiracy. The findings, amplified by the appendix to the state's brief, reveal the following facts as to the defendant's involvement: One of the codefendants stated that he would contact the defendant to take the car; the defendant with a codefendant took the car, in which the keys were left, which was pointed out to them by the owner, and the car was found in the defendant's driveway in Bridgeport. The facts do not reveal that the defendant participated in any of the discussions pertaining to the conspiracy or that he was involved in notifying the police or the insurance company after having taken the car. Boiled down to that which is attributable

to the defendant alone, the facts merely reveal that the defendant, with the owner's consent, took the car and left it in his own driveway. Neither the finding nor the appendix to the state's brief reveals what information the defendant had concerning the incident, what Abraham Stein, the codefendant who was with the defendant when the car was taken, or anyone else gave to the defendant at any time, or what the defendant's purpose was in taking the car with the owner's consent.

It cannot, then, be said that the defendant's plea of guilty to conspiracy was intelligently, knowingly made. Facts supportive of the specific intent required of conspiracy; State v. *Williams,* 169 Conn. 322, 334, 363 A.2d 72; are absent from any part of the record. As the United States Supreme Court noted when confronted with a similar situation: "There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that [the defendant] had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent." *Henderson* v. *Morgan,* 426 U.S. 637, 646, 96 S. Ct. 2253, 49 L. Ed. 2d 108.

At no time in the proceedings at issue were the specific elements of each charge enumerated to the defendant, nor was he personally questioned as to the specific nature of his own conduct. Since a plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury; State v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100; State v. *Carta,* 90 Conn. 79, 81, 96 A. 411; entry of such a plea is an

extremely weighty matter. "If the questioning of a defendant to determine whether a plea of guilty represents a voluntary and intelligent choice and waiver of rights is to have any meaning, the answers elicited from the defendant in open court should be something more than a mouthing of platitudes." *State* v. *Battle,* supra, 475. In the present case, as in *State* v. *Battle,* the questioning by the court stopped short of eliciting a factual basis for the pleas. The facts reveal neither that the defendant acted with the requisite intent nor that he was aware that the crimes charged required such intent. Without that basis, the pleas were without adequate support to render them valid. Where a plea is invalid in the first instance the court is without discretion to deny a request that it be withdrawn. *State* v. *Battle,* supra, 476.

The fact that the record reveals inadequate factual support for either plea in no way suggests that further facts, properly submitted to a court or jury, could not support a conviction for the crimes charged. That question is not now before this court. The only issues decided concern the sufficiency of the facts before the court at the time the pleas were entered. We cannot say that the record reveals an adequate factual basis for those pleas.

There is error, the judgment is set aside and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion BOGDANSKI, LONGO and SPEZIALE, Js., concurred.

HOUSE, C. J. (dissenting). I do not agree with the conclusion of the majority opinion that the trial court erred in refusing to vacate the defendant's

plea of guilty to the count of the substituted information charging him with conspiracy to commit larceny in the first degree by defrauding the insurance company which insured Park's car. That conclusion of error is predicated on the conclusion that this court "cannot say that the record reveals adequate factual basis" for the plea.

The fallacy of that conclusion can best be demonstrated by referring to the proceedings at the time the trial court accepted the plea of guilty and by noting the court's careful and exhaustive questioning of the defendant and the latter's answers after he had entered his plea of guilty and before it was accepted by the court.[1] Those proceedings,

[1] "The Court: Now, Mr. Marra, I will ask you the same questions I did the other gentlemen on that. Have you thoroughly discussed these matters with Mr. Owens [attorney for the defendant]?

Mr. Marra: Yes.

The Court: Are you satisfied with the advice of counsel and assistance he has rendered you in this regard?

Mr. Marra: Yes.

The Court: You understand by entering pleas of guilty you are giving up certain of your constitutional rights?

Mr. Marra: Yes, sir.

The Court: You understand you are giving up your right to a trial by court or by jury?

Mr. Marra: Yes.

The Court: Do you understand you are giving up your right to cross-examine and confront your accusers?

Mr. Marra: Yes.

The Court: Do you understand you are giving up your privilege against compulsory self-incrimination?

Mr. Marra: Yes.

The Court: Have any threats been used against you, force, or duress to induce you to enter these pleas of guilty?

Mr. Marra: No.

The Court: Do you understand if the court accepts your pleas of guilty you can't reopen them without prior permission from the court?

Mr. Marra: Yes.

The Court: If the court accepts your pleas of guilty, the court is not necessarily bound by any recommendation the state's attorney

as properly printed in the appendix to the state's brief, delineate a conspiracy to defraud the insurance company by an apparent theft of Park's car, an arrangement by other conspirators with the defendant Marra to go to New London and take the car, and the fact that Marra did come from Bridgeport with one of the conspirators and participated in the overt act of taking the car, which was later discovered in his driveway in Bridgeport. Obviously his specific intent to participate in the attempted fraud could only be shown on a trial by circumstantial evidence but "[s]pecific intent is usually proven by circumstantial evidence. *State*

might make concerning disposition in these matters. Are you aware of that?

Mr. Marra: Yes.

The Court: As I understand it, you pleaded guilty to conspiracy to commit larceny in the first degree, which is a Class B felony, calls for a maximum of up to twenty years. Are you aware of that, sir?

Mr. Marra: Yes.

The Court: As to the second count, you pleaded guilty to the crime of larceny in the first degree which is a Class B felony, calls for a maximum of up to twenty years. Are you aware of that?

Mr. Marra: Yes.

The Court: I think we can revert to the factual situation, Mr. Hurley [assistant state's attorney].

Mr. Hurley: Thank you, Your Honor. This situation began on October 30, 1975, Your Honor, when the accused Parks reported that his 1975 Ford Model Elite had been stolen. Subsequent police investigation turned out that Mr. Parks, who is a barber, has the Gentlemen's Choice Barber Shop on Poquonock Road in Groton, and that the accused, Ira Blonder, James Kernozek, and Abraham Stein, all work at Blonder's Auto Parts in Waterford, and that Thomas Marra comes from Bridgeport, and that he had a previous record of auto theft.

It seems that Mr. Parks was in need of money, and he discussed this problem with Mr. Blonder, and was talking about selling his car, which he had recently purchased in June for $8400. He owed about $5500 on the vehicle. He was making payments of $162 a month, and he was having trouble with the car; and, again, had thought of selling it. But he was told he would probably lose money if he sold it.

v. *Sul*, 146 Conn. 78, 87, 147 A.2d 686; *State* v. *Nathan*, 138 Conn. 485, 488, 86 A.2d 322." *State* v. *Williams*, 169 Conn. 322, 334, 363 A.2d 72.

The trial court expressly found that at the time the defendant entered his plea he had the benefit of effective legal counsel, that he understood the nature of the charges and the consequences of his plea, that he was aware of his constitutional rights, that he acted voluntarily, and that there was a factual basis for his plea, and concluded that his plea was entered voluntarily. Every one of those findings is amply supported by the record of the

In speaking with James Kernozek, he was told that there might be a better way to arrange to get money on the car. And he also spoke to Mr. Blonder about this. They told him it would cost him $300 to have the car stolen, and then he would be able to collect on the loss from his insurance company.

This was finally worked out, and it was arranged through Blonder and Kernozek that the accused, who is not here today, Stein, would, with Mr. Marra, who was contacted by Mr. Kernozek or Mr. Stein, I'm not sure which, that he would come up and arrange to steal the car. Mr. Marra came up with Mr. Stein. The keys were left in the car. Parks pointed out to them where the car was; they took it. Blonder was with him at the time. And then Mr. Parks and Blonder arranged to call the police and notify the police the car had been stolen; and this was done.

He was actually sent a check and put in a claim for the loss—Mr. Parks did. He was actually sent a check from the insurance company, but apparently at this time the theft had been discovered. The company stopped payment. And I believe with his lawyer— I think he didn't attempt to cash it. His lawyer advised him to return the check to the company, which he did.

The vehicle was found in the driveway of Thomas Marra in Bridgeport and was identified as the vehicle that had been taken. Mr. Parks was cooperative with the police and told them the entire story. Then, when confronted, Mr. Blonder and Kernozek and Stein also admitted their involvement.

The Court: Now, Mr. Marra, listening to the factual situation, are these the offenses to which you wish to enter your pleas of guilty, sir?

Mr. Marra: Yes, sir, Your Honor.

The Court: Are you on probation or parole at the present time?

court's personal questioning of the defendant and his answers to the inquiries. Very significantly, the defendant has not attacked a single one of those findings by an assignment of error as required by § 621 of the Practice Book. The court's conclusions, in turn, are fully supported by the finding, and "[c]onclusions logically supported by the finding must stand." *State* v. *Warren,* 169 Conn. 207, 213, 363 A.2d 91.

I would find no error in the court's denial of the defendant's motion to vacate his plea of guilty to the conspiracy charge.

---

Mr. Marra: No, Your Honor.

The Court: All right. The recommendation situation in this matter?

Mr. Hurley: In this case the recommendation will be prison suspended and one year in jail.

The Court: As I understand it then, on one count it will be prison, execution suspended, and one year recommended to be effective in jail. Do you understand that, sir?

Mr. Marra: Yes, Your Honor.

The Court: Hearing the recommendations, do you still want the court to accept your pleas of guilty because you are voluntarily making the same and are guilty of the offenses?

Mr. Marra: Yes, Your Honor.

The Court: All right. Do either of you gentlemen see any reason why the court should not accept the pleas of guilty?

Mr. Owens: No, Your Honor.

The Court: Mr. Hurley?

Mr. Hurley: No, Your Honor.

The Court: In view of that, the court will make the finding that the accused has had the benefit of effective legal assistance of counsel. He understands the nature of the charges and consequences of his plea. He is aware of his constitutional rights, including his privilege against compulsory self-incrimination, his right to a trial by court or by jury, his right to confront his accusers. He is acting voluntarily. There is a factual basis for the acceptance of the pleas. Hence the pleas of guilty are accepted and findings of guilty are noted."